**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:13-CR-128-L-1** |
| | § | |
| **STERIC PAUL MITCHELL (1)**, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Steric Paul Mitchell's ("Mitchell" or "Defendant") Motion to

Suppress Statement ("Motion"), filed on August 9, 2013. After careful consideration of the Motion,

response, record, and applicable law, the court **denies** the Motion.

**I.      Background**

**A.      Procedural Background**

Defendant was named in a four-count indictment ("Indictment") charging him with

Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(a), Using, Carrying, and

Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C.

§§ 924(c)(1)(A)(ii) and (2), Kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and (2), and Felon

in Possession of a Firearm, in violation of 18 U.S.C. §§ 922 (g)(1) and 924(e)(1).

On August 9, 2013, Defendant filed the Motion, requesting the court to suppress the

statements Mitchell gave to Duncanville police detectives on May 7, 2012. Def.'s Mot. to

Suppress 1. Specifically, Defendant moves the court to suppress statements he gave to the

Duncanville police detectives because the "detectives obtained his waiver of rights through

subterfuge." Def.'s Mot. to Suppress 1. Defendant argues that the waiver-of-rights form and execution used when the detectives read Defendant his *Miranda* rights were flawed. *Id*. at 2. Defendant also argues that the detectives' statements and hostility coerced Defendant into offering certain statements. *Id*. at 3-4. Finally, Defendant states that due to his fatigue, lack of food, and physical condition, his statements were involuntary. *Id*. at 4.

In response, the United States of America ("the government") requests that the court deny the Motion. The government argues that Defendant's statements were made after he knowingly, intelligently, and voluntarily waived his *Miranda* rights. Govt.'s Resp. to Def.'s Mot. to Dismiss, Mot. to Strike Surplusage, Mot. to Suppress Statement, and Mot. to Sever Count Four ("Response") 17. The government also asserts that the Defendant's concerns with the statements and hostility of the detectives are irrelevant as to whether the waiver was voluntary since the alleged statements and hostility came after the waiver. *Id*. at 20. The government also contends that the alleged lack of sleep (Defendant had not slept since the morning before the day of the interrogation) and the alleged lack of food (Defendant allegedly did not eat breakfast or lunch that day but did receive a hot meal only a couple of hours before the interrogation) were not caused by police action and therefore did not impact the voluntariness of Defendant's waiver. *Id*. at 21; *see also* Gov't Supplement to the Gov't Resp. to Mitchell's Mot. to Suppress Statement 1. Finally, the government states that since Defendant was not tased in an attempt to obtain a statement and since the tasing occurred significantly earlier in the day, Defendant's physical condition due to the tasing does not impact the voluntariness of the waiver. Resp. 22.

### B.    Factual Background

On May 6, 2012, Defendant, along with Gregory Steven Hunt ("Hunt"), allegedly kidnapped a young woman named K.R.  Indictment at 1.  As the Indictment sets forth, Defendant allegedly devised a plan to kidnap this young woman, rape her, and use a taser gun, a firearm, and zip-ties to successfully complete his plan.  *Id*. at 2.  K.R. was allegedly told by a third-party that a friend was looking for a woman who could do a private dance at a party.  *Id*.  K.R. agreed to do the private dance at the party.  *Id*.  Instead of being picked up for the party, Hunt, who was hired by Defendant, picked up K.R. and brought her to a home.  *Id*. at 3.  Defendant was already at the home and threatened her with a firearm and shocked her with a Taser gun.  *Id*.  Hunt then raped K.R.  *Id*.

On May 7, 2012, Defendant allegedly drove K.R. to a second home, raped her, and negotiated the sale of K.R.  *Id*.  Later that day, Defendant was arrested and taken into custody.  At approximately 8:00pm, the Duncanville police detectives interrogated Defendant.  On April 10, 2013, Defendant was indicted in this matter.

Defendant asserts that the waiver-of-rights form used by the detectives and the execution of the form were flawed.  Def.'s Mot. to Suppress at 2.  Defendant argues that the form does not give a defendant the opportunity to acknowledge his or her rights and instead only provides the opportunity to waive the rights.  *Id*.  Additionally, Defendant states that the detectives never orally stated that by signing the form, Defendant would be waiving his rights.  *Id*.

Defendant also argues that the questioning and tone of the detectives were coercive and prevented the Defendant from providing a voluntary statement.  *Id*. at 3-4.  Defendant states that the detectives told  Defendant that he needed to "tell his story to help himself," and "get good things about himself before the people who will be making important decisions about his life," and provide

"something positive on his side." *Id*. at 3. Defendant also asserts that the detectives yelled at Defendant and became hostile. *Id*. at 3-4. Finally, Defendant states that his lack of sleep, lack of food, and previous encounter with a taser gun earlier in the day contributed to his inability to provide a voluntary statement. *Id*. at 4.

The government asserts that the detectives did in fact clearly explain that by signing the form, Defendant would be waiving his previously stated rights. Govt.'s Resp. to Def.'s Mot. to Dismiss, Mot. to Strike Surplusage, Mot. to Suppress Statement, and Mot. to Sever Count Four at 19 n.6. This statement made by one of the detectives can be heard in the government's Exhibit A.

The government also argues that the comments made by the detectives after the waiver of the rights are irrelevant. *Id*. at 20. The government states that when determining whether a statement is voluntary, the court should look only to whether the waiver of his *Miranda* rights was voluntary, instead of looking at the voluntariness of the exact statements. *Id*. The government explains that the waiver must be a free and deliberate choice, without coercion, and with an understanding of the consequences. *Id*. at 17.

Additionally, the government asserts that Defendant's tired and hungry state were not a result of coercive police action and therefore should have no impact on the voluntariness of the waiver of Miranda rights. *Id*. at 21. Further, the government states that the detectives used the taser gun on Defendant significantly earlier in the day and therefore it did not affect the voluntary nature of the statement made that evening. *Id*. at 21-22. The government also states that Defendant simply missed breakfast and lunch the day of the interrogation, but he did receive a hot meal at 5:30pm, only approximately three hours before the interrogation. *Id*. at 21; *see also* Govt.'s Mot. for Leave to Supplement Its Resp. to Mitchell's Mot. to Suppress Statement 1. Finally, the government states that

Defendant had not slept since only the day before the interrogation.  Govt.'s Resp. to Def.'s Mot. to Dismiss, Mot. to Strike Surplusage, Mot. to Suppress Statement, and Mot. to Sever Count Four at 21.

## II.     Relevant Legal Standards

### A.     <u>Legal Standard for *Miranda* Warnings</u>

Under *Miranda v. Arizona*, 348 U.S. 436 (1966), "to preserve the privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retained or appointed counsel." *United States v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006) (citing *Miranda*, 384 U.S. at 444).  Such *Miranda* warnings must be administered before "custodial interrogations."  *United States v. Chavira*, 614 F.3d 127, 133 (5th Cir. 2010) (quoting *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc)) (footnote omitted).

A suspect is "in custody" for *Miranda* purposes "'when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *United Bengivenga*, 845 F.2d at 595).  Custodial statements are not protected by *Miranda* unless they are made as the result of "interrogation" by law enforcement.  An "interrogation" under *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Chavira*, 614 F.3d at 133 n.8 (quoting *Rhode Island v. Innis*, 446 U.S. 29 (1980)) (internal quotation marks omitted).

Generally, statements obtained during custodial interrogation when the defendant was not provided adequate *Miranda* warnings are inadmissible. *Courtney*, 463 F.3d at 336 (citing *Missouri v. Seibert*, 542 U.S. 600, 608 (2004)). "But a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of his *Miranda* rights." *Id.* (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Accordingly, such statements may be admissible as evidence against the defendant at trial.

### B.     Legal Standard for Involuntary Confessions

Federal courts have recognized two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citing *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998)).

In determining the voluntariness of a confession or statement under the Fifth Amendment, courts focus on whether defendant was first warned of his *Miranda* rights and voluntarily and intelligently waived those rights. For a defendant's waiver of his *Miranda* rights to be effective, it must be voluntary. This inquiry has two dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005) (quoting *United States v. Andrews*, 22 F.3d 1328, 1337 (5th Cir. 1994)).

Even if *Miranda* warnings were given and the government showed that an effective *Miranda* waiver was made, the government must show that the confession was voluntary under the due process standard. Under the due process test, a court must evaluate "'whether a defendant's will was [overwhelmed]' by the circumstances surrounding the giving of a confession." *Dickerson*, 530 U.S. at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). "This inquiry 'takes into consideration the totality of all the surrounding circumstances both the characteristics of the accused and the details of the interrogation.'" *United States v. Turner*, 674 F.3d 420, 432 (5th Cir. 2012) (quoting *Dickerson*, 530 U.S. at 434). "'Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.'" *Id.* at 432-33 (quoting *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997)).

## III.   Analysis

### A.   Whether the *Miranda* Warnings Were Flawed

The waiver form provided by the Duncanville Police Department lays out the specific *Miranda* rights and provides a clear opportunity for Defendant to waive these rights. Once adequate warnings have been given, a suspect may knowingly and intelligently waive his *Miranda* rights and agree to answer certain questions posed by the detectives. *Cardenas*, 410 F.3d at 292. A defendant's waiver of his *Miranda* rights is effective only if voluntary. *Id.*

The Duncanville Police Department's Adult Waiver provides a space for the Defendant to affirm that he "knowingly, intelligently, and voluntarily waive[s] these rights, prior to and during the

making of any oral or written statement."  In no way does the Duncanville Police Department "hide the ball" in its use of the waiver form.

Further, while Defendant argues that the detective did not orally read the portion about waiving his rights, the government's Exhibit A provides clear proof that the detective did in fact read the relevant portions of the waiver form.  For these reasons, the evidence shows that the *Miranda* warnings were not flawed, and the court will deny Defendant's request to suppress any statements made by him during the interrogation held on May 7, 2012, on the ground that the *Miranda* warnings were flawed.

### B.     Whether Defendant's Waiver and Statements Were Voluntary

The Defendant's waiver and statements were voluntary and can be used by the government against Defendant. Defendant argues that the detective's comments encouraging him to state something positive, the detective's tone of voice, and the overall lack of food, sleep, and impact caused by the taser gun all prevented him from voluntarily providing his waiver and statements. These factors, however, are not significant enough to coerce Defendant into making involuntarily statements given the totality of the surrounding circumstances.

### 1.     *Voluntariness of the Waiver*

The detective's alleged statements to Defendant, the detective's alleged tone of voice, and Defendant's lack of sleep, lack of food, and medical condition did not prevent Defendant from making a free and deliberate choice to waive his *Miranda* rights.  These factors did not intimidate, coerce, or deceive Defendant into waiving rights that he did not want to waive.  First, the government's Exhibit A shows that before the detective read the *Miranda* rights to Defendant, the detective simply asked Defendant to share a few things about himself, such as where he grew up,

what his grades were, how far into high school he went, and whether he played any sports. The detective stated that he likes to give people an opportunity to tell him about themselves. None of these statements prevented Defendant from making a free and deliberate choice to waive his *Miranda* rights, and Defendant knew what rights he was waiving and the consequences of that waiver. Additionally, based on the government's Exhibit A, the detective did not raise his voice or become hostile before Defendant waived his rights.

Finally, Defendant's lack of sleep, lack of food, and medical condition did not prevent him from making a free and deliberate choice to waive his rights. Defendant missed breakfast and lunch the day of the interrogation; however, the government notes that Defendant was served a hot meal at 5:30pm, only two and a half hours before the interrogation. Additionally, Defendant's last sleeping period was the morning of the day before the interrogation.[*] Finally, the taser gun was used on him about eight to nine hours before the interrogation. These combined factors did not coerce, intimidate, or deceive Defendant into waiving his rights. The Fifth Circuit addressed a similar situation when a defendant "argue[d] that his fatigued physical and emotional condition at the time of his confession made him more susceptible to coercion," which would make his confession involuntary. *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998). The court held that there was "nothing in the record to suggest that [the defendant] complained to the officers about his fatigue; that he requested additional time to rest; or that the officers conditioned additional rest time on receiving his confession." *Id*. The court also addressed the defendant's claims that he was "deprived of a meal before he entered the interview in which he confessed." *Id*. at 219 n.9. The court stated

_____

[*]Although there is no affidavit or declaration establishing when Defendant last slept before the interrogation, for the purposes of this opinion, the court treats the allegations as being true.

that there was "no evidence in the record . . . that he ever requested food, nor does he offer an explanation why he decided not to make a request. Nothing in the record indicates that the officers conditioned [defendant's] access to food and drink on his confessing." *Id.* The court therefore held that the confession was not coerced and was voluntary. *Id.* at 220. Therefore, despite Defendant asserting that his fatigue, overall physical condition, and hunger prevented him from making a voluntary waiver of his *Miranda* rights, there is nothing in the record to indicate that Defendant requested additional time to rest or requested food, that Defendant complained about his condition, or that the officers conditioned additional rest time or food on receiving a confession. Defendant's waiver was therefore voluntary.

2.      *Voluntariness of the Statements*

Additionally, given the totality of the surrounding circumstances after Defendant waived his *Miranda* rights, Defendant's will was not overwhelmed by the circumstances surrounding the statements that he made. The detective's alleged statements that simply encouraged Defendant to say something positive about himself, the detective's alleged hostile or aggressive tone, and Defendant's alleged lack of sleep, lack of food, and medical condition do not reach a level that would overwhelm Defendant's will to voluntarily make statements during the interrogation. Simply telling Defendant that he needs "something positive" on his side does not come close to the type of coercion that would make Defendant's statements involuntary. While there is no Fifth Circuit precedent precisely discussing an interrogator raising his or her voice in this context, other circuits have held that an officer raising his voice "does not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." *See, e.g.*, *Simons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001). After listening to the audio of the interrogation

in its entirety, the court does not believe the tone of voice rose to the level that would cause Defendant to be "overborne" and thereby render any of his statements involuntary. The court certainly does not expect an interrogator to act in a coercive, threatening, or overbearing manner; however, an interrogation is not a playbook for civility. An interrogating officer can, and often does, use terms and language that would not be appropriate in another venue. As the Fifth Circuit has noted, "there is nothing inherently wrong with efforts to create a favorable climate for confession." *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988). Further, it is universally known that an interrogation can be stopped at any time by a custodial suspect.

Finally, Defendant received a hot meal only a few hours before the interrogation, received sleep the day before, and was shot by a taser gun approximately eight hours before the interrogation due to his failure to comply with officers' law commands. These facts are clearly not enough to render a statement made by the Defendant involuntary. As discussed above, when addressing a similar situation, the Fifth Circuit held that since there was "nothing in the record to suggest that [the defendant] complained to the officers about his fatigue; that he requested additional time to rest; or that the officers conditioned additional rest time on receiving his confession," the statement was voluntary. *Muniz*, 132 F.3d at 220. The court used the same type of reasoning when analyzing the deprivation of food. *Id*. at 219 n.9. In the case at hand, there is nothing in the record showing that Mitchell requested additional time to rest or requested food, that Mitchell complained about his condition, or that the officers conditioned additional rest time or food on receiving a confession.

Therefore, Defendant's statements were voluntary and the government can use these statements against Defendant in trial.

**IV.     Conclusion**

For the reasons herein stated, the court **determines** that Defendant's statements were voluntary and the waiver of rights form and execution were not flawed.  Defendant therefore is not entitled to suppression of these statements, and the government may use them as evidence against him at trial.  Accordingly, the court **denies** Defendant's Motion.

**It is so ordered** this 20th day of September, 2013.

Sam A. Lindsay
United States District Judge